OPINION OF THE COURT
Suzanne M. Mondo, J.
Defendant Melvin Osborne is charged with violating Arts and Cultural Affairs Law § 25.11, in that he attempted to resell concert tickets in front of a place of entertainment that has a seating capacity of over 5,000. He now moves to dismiss for facial insufficiency.
The accusatory instrument alleges the following:
“Police Officer Edward Quinn * * * observed the defendant offer to sell 2 tickets for the billy joel concert which was taking place at madison square garden on 12/22/98 and for which the established price is $40.
*153 “Police Officer Edward Quinn * * * heard the defendant offer to sell the above-described ticket(s) and saying who needs tickets.
“The above transaction took place within 1,000 feet of the described place of entertainment, which has permanent seating capacity in excess of 5,000 persons. (Police Officer Edward Quinn * * * knows from training and experience that 1,000 feet is approximately 3 city streets or 2 avenues.) Moreover, based upon training and experience, Police Officer Edward Quinn * * * knows that the described place of entertainment does not license anyone to resell tickets in a public place (i.e., all licensed resellers are private business establishments)”.
The defendant contends that the accusatory instrument is facially insufficient because there is no “supporting documentation as to whether the defendant even possessed tickets to sell.” The defendant emphasizes that no tickets were recovered from him, that he “was not observed exchanging money for any tickets nor did he have a conversation with any other person.”
The People respond that the statute “does not require the actual sale of or possession of tickets at the time of the offer.” They argue that the statute “prohibits even the offer to resell tickets”. The People indicate that the defendant may have been a “steerer”, assisting another, who possessed the tickets.
Article 25 of the Arts and Cultural Affairs Law, entitled Tickets to Places of Entertainment, “is often thought of and referred to as the ‘anti-scalping’ law.” (Block, Practice Commentaries, McKinney’s Cons Laws of NY, Book 3B, Arts and Cultural Affairs Law art 25, 1999 Pocket Part, at 118.) “ ‘Ticket Scalping’ is * * * the practice of selling tickets to popular entertainment events at prices which greatly exceed the established price for those tickets.” (People v Concert Connection, 211 AD2d 310, 312 [2d Dept 1995].[1] Article 25 was enacted to “safeguard [] the public against fraud, extortion, exorbitant rates and similar abuses.” (Arts and Cultural Affairs Law § 25.01 [legislative findings].)
Section 25.11 governs ticket resales at places of entertainment that have permanent seating capacity in excess of 5,000 *154 seats. “This section was intended to resolve the problem of fans and spectators being confronted and accosted by ticket scalpers upon entering a place of entertainment.” (Block, Practice Commentaries, op. cit., at 126.) Section 25.11 provides:
“1. No person, firm, corporation or not-for-profit organization shall resell, offer to resell or solicit the resale of any ticket to any place of entertainment having a permanent seating capacity in excess of five thousand persons within one thousand feet from the physical structure of such place of entertainment unless such person, firm, or corporation is lawfully reselling tickets from a location licensed pursuant to section 25.13 of this article.
“2. Notwithstanding subdivision one of this section, an operator may designate an area within the property line of such place of entertainment having a permanent seating capacity in excess of five thousand persons for the lawful resale of tickets only to events at such place of entertainment by any person, firm, corporation or not-for-profit organization which purchased the tickets for the purposes described in section 25.05 of this article and is no longer able to use them.”[2]
There appear to be no reported decisions to guide the court in interpreting section 25.11. As the defendant indicates, no tickets were recovered from him, and he was not observed or overheard making a sale to anyone. There is also no indication that the defendant was a steerer because he is not linked in *155 any way to anyone else. Further, the defendant did not make any admissions. However, the accusatory instrument alleges that the defendant offered for resale[3] two tickets to a Billy Joel concert on the night of the concert in question within 1,000 feet of the concert hall, which had a seating capacity in excess of 5,000 persons. It may well be that the People will be unable to meet their burden of proof at trial. However, for the purposes of facial sufficiency, the above allegations are sufficient.
Accordingly, the defendant’s motion to dismiss for facial insufficiency is denied.

. Although there is a perception by the public that scalping takes place “on the street, generally near the place of entertainment for which tickets are being sold”, frequently “re-selling tickets for prices far in excess of those permitted by law” occurs “in office to office transactions between large unlicensed purveyors of tickets and large New York businesses willing to pay for the best tickets and for immediate access.” (Block, Practice Commentaries, op. cit., at 118.)

. Section 25.05 (1) provides an exemption, “[e]xcept as provided in * * * section 25.11 * * * to any person, firm or corporation which purchases any tickets with the intent of using the tickets solely for their own use or the use of their invitees, employees and agents or which purchases tickets on behalf of others with the intent of reselling such tickets to such others without realizing a profit therefrom.”
The Legislature recognized that “circumstances occasionally arise that preclude the use of tickets purchased in advance and that people need to recover their expenses.” (Arts and Cultural Affairs Law § 25.01.) Thus, the Legislature indicated that “enforcement of [article 25] shall * * * differentiate between those who would lawfully recover their expenses and those who would gain substantial profits from unlawful reselling of tickets.” (Ibid.; People v Concert Connection, 211 AD2d, supra, at 318.)
However, “the personal use exemption created in § 25.05(1) may be of limited value at certain venues because of the restriction on resales within one thousand feet of a place of entertainment with a seating capacity in excess of 5000 persons (§ 25.11).” (Block, Practice Commentaries, op. cit., at 127.) Thus, if a person was unable to attend an event at such an arena, that person “would not be able to stand in front of that venue to resell a ticket purchased for personal use, even if the ticket were offered for face value or less, unless the place of entertainment had specifically designated an area for such purpose” (ibid.).

. Resale is defined, in relevant part, as “any sale of a ticket other than a sale by the operator or the operator’s agent who is expressly authorized to make first sales of such tickets.” (Arts and Cultural Affairs Law § 25.03 [9].) The accusatory instrument alleges that Madison Square Garden did not authorize the defendant to sell its tickets.